# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| JOSE S. LUNA LUNA,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>    Defendant. | No. EDCV 08-0890 AJW<br><br><br><br>MEMORANDUM OF<br>DECISION |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are not disputed and are recited in the Joint Stipulation. [See JS 2]. Plaintiff alleged that he became disabled as of October 1, 2002, primarily due to a lower back injury with resulting symptoms and limitations.[JS 1]. After a hearing, an administrative law judge (the "ALJ") issued a partially favorable decision on March 24, 2007 finding plaintiff disabled for a closed period, from October 1, 2002 through March 31, 2004. [JS 2; Administrative Record ("AR") 8-26]. The ALJ also found that as of April 1, 2004, plaintiff's condition had improved to the point that he could perform a limited ranged of light work consistent with his past

relevant work as a production supervisor. [AR 25].  That decision constitutes the Commissioner's final decision in this case. [See AR 3-6].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

Plaintiff contends that the ALJ did not properly evaluate whether plaintiff's impairments medically improved as of April 1, 2004, terminating his closed period of disability. [JS 3].

Once a claimant is found disabled under the Social Security Act, a presumption of continuing disability arises. See Bellamy v. Secretary of Health & Human Services, 755 F.2d 1380, 1381 (9th Cir. 1985); Mendoza v. Apfel, 88 F.Supp.2d 1108, 1113 (C.D. Cal. 2000). Benefits cannot be terminated unless substantial evidence demonstrates medical improvement in the claimant's impairment so that the claimant is able to engage in substantial gainful activity. See 42 U.S.C. § 423(f); Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983).  Although the claimant retains the burden of proof, the presumption of continuing disability shifts the burden of production to the Commissioner to produce evidence to meet or rebut the presumption. See Bellamy, 755 F.2d at 1381.

1        Medical improvement is defined as

2        any decrease in the medical severity of your impairment(s) which was present at

3        the time of the most recent favorable medical decision that you were disabled or

4        continued to be disabled. A determination that there has been a decrease in medical

5        severity must be based on changes (improvement) in the symptoms, signs and/or

6        laboratory findings associated with your impairment(s) (see § 404.1528).

7 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i).

8 To determine whether the medical improvement is related to the ability to work, the Commissioner will compare the claimant's residual functional capacity ("RFC") at the time of the most recent favorable decision with a current RFC based on only those impairments which were present at the time eligibility was most recently approved. Once medical improvement is found to be related to a beneficiary's ability to work, the analysis proceeds to the next step. If the Commissioner finds that the claimant's condition has medically improved and the improvement is related to his ability to work, the Commissioner will consider the claimant's current impairments and determine whether these may, nonetheless, preclude substantial gainful activity. See 20 C.F.R. §§ 404.1594(a); 404.1594(b)(5); 416.994(b); 416.994(b)(5). A sequential analysis which includes consideration of all these factors is set forth in the regulations. See 20 C.F.R. §§ 404.1594(f), 416.994(b)(5). The severity of all current impairments must be analyzed, plaintiff's RFC must be assessed based on all current impairments, and the issues whether or not a claimant is capable of past relevant work and whether a claimant, considering age, education and work experience, can do other work, must be considered. 20 C.F.R. §§ 404.1594(f); 416.994(b)(5). In essence, the sequential five-step analysis originally applied to determine disability is applied once again.

Plaintiff contends that the ALJ's finding of medical improvement is defective. First, plaintiff contends that in finding that plaintiff had no severe mental impairment, the ALJ impermissibly disregarded the September 13, 2005 opinion of nonexamining state agency physician Dr. Robert Paxton. [JS 4-5].

A medically determinable impairment or combination of impairments is not severe if it

1  causes a slight abnormality that has no more than a minimal effect on an individual's ability to
2  work. Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2006). Plaintiff argues that the "functional
3  assessment" portion of Dr. Paxton's report establishes that plaintiff has a severe mental
4  impairment because Dr. Paxton wrote that plaintiff should be able to remember, follow
5  instructions for, and sustain persistence and pace for simple tasks, interact appropriately with
6  others, and adapt to work-like settings. [JS 4-5; AR 200].

7  In the "medical summary" portion of his report, however, Dr. Paxton said that plaintiff had
8  *no medically determinable* mental impairment, and he gave plaintiff no psychiatric diagnosis. [AR
9  202-215]. That finding was "affirmed as written" on reconsideration by Dr. C.H. Dudley. [AR
10  202]. Accordingly, the ALJ did not err in concluding that the state agency physicians "determined
11  that the claimant has no medically determinable mental impairment or functional limitations." [AR
12  18 (citing AR 202-215)].

13  In addition, the ALJ permissibly relied on the Commissioner's consultative psychologist's
14  findings that plaintiff had a mild memory impairment that caused no more than minimal functional
15  limitations, and on plaintiff's lack of history of any mental health treatment. [AR 18, 180-186].
16  The ALJ's severity finding was not legally erroneous, and the record as a whole supports the
17  ALJ's finding that plaintiff had no severe mental impairment at any time before the date of the
18  ALJ's decision.

19  Second, plaintiff argues that the ALJ mischaracterized the findings and conclusions of
20  plaintiff's workers' compensation treating orthopedist, Dr. William J. Previte. [JS 5; AR 245-255].
21  To support his conclusion that plaintiff regained the ability to work as of April 1, 2004, the ALJ
22  said that he relied on Dr. Previte's findings that plaintiff's condition was permanent and stationary
23  as of March 31, 2004, and that although plaintiff was not free of pain, his condition had "plateaued
24  and no longer requires aggressive orthopedic care." [AR 22]. The ALJ added that Dr. Previte
25  "imposed work restrictions (which have been incorporated into the RFC finding), and concluded
26  that plaintiff would qualify for vocational rehabilitation." [AR 22].

27  Dr. Previte noted that while driving a truck in October 2002, plaintiff suffered injuries in
28  a "roll over motor vehicle accident," including lateral mass fracture of the cervical spine at the

1   C2 level, closed head trauma, rib fractures, lung injuries, and other internal injuries. [AR 245, 252,
2   257]. Plaintiff reported that he had been hospitalized for nearly a month and had undergone spinal
3   surgery. [AR 245-246]. While under Dr. Previte's care, plaintiff had received a "variety of
4   therapies," including physical therapy, chiropractic treatment, acupuncture, and medication. [AR
5   247]. Plaintiff also was being treated by other specialists for dysphagia (difficulty swallowing).
6   [AR 246]. Dr. Previte reviewed the results of plaintiff's MRI and x-ray studies, and he conducted
7   an orthopedic and neurological examination. [AR 247-252]. He concluded that while plaintiff
8   continued to have pain as a residual of his accident, plaintiff had "plateaued with conservative
9   treatment, and it would not appear that his condition requires more aggressive orthopedic care."
10  [AR 247, 253].    Dr. Previte recommended the following work restrictions:

> Pertaining to the cervical spine, he is precluded from wearing of heavy helmets or
> head gear devices, as well as from repetitive cervical spine movements and fixed
> head positions. He is further precluded from heavy lifting. As it pertains to the left
> chest and rib areas, he is precluded from left sided overhead work, as well as
> repetitive reaching, and forceful pushing and pulling. Pertaining to the low back,
> he is precluded from prolonged sitting, prolonged standing, prolonged walking, and
> heavy lifting.

[AR 254]. Dr. Previte stated that while he had not reviewed a formal job analysis, he believed that vocational rehabilitation was indicated. [AR 254].

The ALJ found that both during and after his closed period of disability, his physical functional limitations were the same, but that from October 1, 2002 until March 31, 2004, plaintiff "was unable to maintain an 8-hour workday or 40-hour workweek without unreasonable amounts of time away from work due to the physical pain and symptomatology associated with [his] physical condition and treatment for this condition. [AR 19]. As of April 1, 2004, the ALJ determined that plaintiff's pain and symptoms would no longer unreasonably interfere with his ability to sustain full-time employment within his RFC. [AR 19]. The ALJ described plaintiff's RFC as follows:

> [Plaintiff] was able to lift and/or carry 20 pounds occasionally and 10 pounds

|   |   |
|---|---|
| 1 | frequently. Out of an 8-hour workday, the claimant was able to sit or stand or walk |
| 2 | a total of 6 hours; and was able to sit, stand, or walk a maximum of 2 hours at a |
| 3 | time. [Plaintiff] was precluded from repetitive neck movement, from repetitive |
| 4 | reaching above shoulder level, and from repetitive periods with the head in a fixed |
| 5 | position. [Plaintiff] was precluded from forceful pushing and/or pulling, and he |
| 6 | was precluded from left-sided overhead work. He was able to perform all postural |
| 7 | activities occasionally. He should avoid concentrated exposure to extreme heat |
| 8 | and cold, humidity or wetness, and excessive vibration; and he should avoid all |
| 9 | exposure to hazards such as dangerous or fast-moving machinery and unprotected |
| 10 | heights. [Plaintiff] was precluded from wearing any heavy head gear or helmets. |

[AR 19].

Plaintiff contends that the ALJ's RFC finding did not incorporate all of Dr. Previte's work restrictions, as the ALJ said it did. For example, plaintiff argues that the ALJ's finding that plaintiff is precluded from "repetitive periods with the head in a fixed position" is not the same as Dr. Previte's finding that plaintiff was precluded from "fixed head positions." [JS 7]. What Dr. Previte said is that plaintiff is precluded "from repetitive cervical spine movements and fixed head positions." [AR 254]. It is not clear whether "repetitive" modifies both "cervical spine movements" and "fixed head positions," or only the former phrase. Based on Dr. Previte's report as a whole, the ALJ reasonably concluded that Dr. Previte meant "no *repetitive* fixed head position" rather than "no fixed head position," but the ALJ added that he was not sure what a "repetitive fixed head position would be." [AR 291]. For purposes of his hypothetical questions to the vocational expert, the ALJ interpreted that restriction to mean that plaintiff "can hold the head in a fixed position a maximum of 30 minutes at a time with a break of five minutes." [AR 291]. After clarifying with the vocational expert that in workers' compensation terms, "no repetitive" activity means the ability to perform the activity occasionally, the ALJ "rephrased" his second hypothetical question to the vocational expert so that "it's clearer," as follows:

> No mental limitations, physical limitations a full range of light exertional work,
> except as I say, otherwise as follows: no wearing of any heavy helmets or headgear

- 6 -

1
2
3
4
5

> devices.  This person is occasionally able to perform, to move the neck, is occasionally able to reach overhead, is able to sit, stand or walk in two-hour increments, no forceful pushing and pulling, no left sided overhead work, and able to hold the head in a fixed position for 30 minutes at a time with a five minute break in between.

6  [AR 294].

7  The vocational expert testified that a hypothetical person with that limitation and the other
8  limitations the ALJ described could not perform the plaintiff's past work or alternative work. She
9  added that "the limiting factors are the occasional reaching and the repetitive neck movements in
10  combination with the fixed head and 30 minute increments." [AR 292, 294].

11  For purposes of his third hypothetical question, the ALJ instructed the vocational expert
12  to assume that no repetitive activity means

13
14
15
16
17
18

> no continuous activity for periods of time, so, for example, when it says no repetitive neck movement, I'm interpreting that to mean is not able to move the neck continuously or repeatedly for periods of time. . . . [S]o hypothetical three is the same as, contains the same domains [as] hypothetical two except that repetitive now means continuous. . . . Based on these circumstances, could this person perform the claimant's past work?

19  [AR 295]. The vocational expert answered, "Well, a production supervisor, if that's what he was,
20  would be performable." [AR 295]. The ALJ found that plaintiff's RFC, as articulated in the ALJ's
21  hearing decision, did not preclude performance of plaintiff's past relevant work as a production
22  supervisor as of April 1, 2004. [AR 25].

23  The ALJ based his finding that plaintiff could perform his past work as a production
24  supervisor on the vocational expert's testimony in response to the ALJ's third hypothetical
25  question, which, as described above, was the same as his second question, except that he instructed
26  the vocational expert to assume that "repetitive" meant "continuous." [AR 295]. The problem with
27  that instruction is that the word "repetitive" appears nowhere in the second hypothetical question
28  as "rephrased" by the ALJ. Before the ALJ "rephrased" his second hypothetical question, he

engaged in a colloquy with the vocational expert about aspects of the second hypothetical question he was attempting to formulate, and he made changes to that proposed second hypothetical question as he went along. Apparently aware that he had not formulated a complete or coherent second hypothetical question, the ALJ "rephrased" it so as to make it more clear, without using the term "repetitive." [See AR 289-295]. Because the term "repetitive" did not appear in the second hypothetical question, tt is not clear how altering the definition of "repetitive" provided an evidentiary basis for the vocational expert's testimony, in response to that question, that the hypothetical person could perform plaintiff's past work as a production supervisor.

In addition, the ALJ's RFC finding omits Dr. Previte's preclusion against "repetitive reaching," and specifies only a limitation to "repetitive reaching above shoulder level." [AR 19, 254]. The vocational expert testified that if the hypothetical person had a limitation to "occasional reaching," the occupational base would be significantly eroded, and that was one of the limitations she relied upon in testifying, in response to the second hypothetical question, that no work could be performed. [AR 292-294].

The upshot of the ALJ's confusing examination of the vocational expert is that the record does not clearly disclose the assumptions that the vocational expert actually relied upon to testify that the hypothetical person could perform his past job as a production supervisor. The vocational expert, moreover, did not testify that there were any alternative jobs that person could perform. This is not consistent with the Ninth Circuit's teachings. See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)("When the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the vocational expert's head, we are left with nothing to review.")(ellipsis and alteration omitted)(quoting Winfrey v. Chater, 92 F.3d 1017, 1025 (10th Cir.1996)).

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of

1  discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has adopted the following test,
2  known as the "Smolen test," to determine whether evidence should be credited and the case
3  remanded for an award of benefits:

4    (1) the ALJ has failed to provide legally sufficient reasons for rejecting such
5    evidence, (2) there are no outstanding issues that must be resolved before a
6    determination of disability can be made, and (3) it is clear from the record that the
7    ALJ would be required to find the claimant disabled were such evidence credited.

8  Harman, 211 F.3d at 1178 (quoting Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996)).

9      A remand for further administrative proceedings is the appropriate remedy because it is
10 not clear from the record that plaintiff cannot perform his past relevant work or alternative work
11 after March 31, 2004. On remand, the ALJ should give plaintiff the opportunity for a new hearing
12 and issue a new hearing decision with appropriate findings. See Bunnell v. Barnhart, 336 F.3d
13 1112, 1115-1116 (9th Cir. 2003)(remanding for further administrative proceedings where several
14 "outstanding issues" remain to be resolved, including "if she is disabled, the timing and duration
15 of her disability," whether the ALJ "must credit her testimony as true,"and whether, according
16 to a vocational expert, there was alternative work the claimant could perform with all of the
17 limitations supported by the record); Pinto, 249 F.3d at 848 (remanding for further administrative
18 proceedings).[1]

### Conclusion

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

DATED: October 13, 2009

ANDREW J. WISTRICH

---

[1] This disposition makes it unnecessary to separately consider plaintiff's additional contentions.

- 9 -

1                                                 United States Magistrate Judge